UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CHRISTOPHER M SWISHER a/k/a CHRISTOPHER SWISHER, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 1:22-cv-01149-JMS-KMB |
| CURTIS Ms., C/O, Correctional Officer, MARTIN Ms., C/O, Correctional Officer, | ) ) ) ) | |
| Defendants. | ) | |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Christopher Swisher brought this action alleging he sustained injuries at the Delaware County Jail ("DCJ") in violation of his Fourteenth Amendment rights. Defendants Officers Arlene Curtis and Bridgette Martin have moved for summary judgment. Dkt. [47]. For the reasons below, that motion is **GRANTED**.

**I.**
**Standard of Review**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need

1

not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

## II.
## Factual Background

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to Mr. Swisher and draws all reasonable inferences in his favor. *Khungar*, 985 F.3d at 572–73.

On May 1, 2022, Mr. Swisher was a pretrial detainee at the DCJ. Dkt. 48-1 at 16-17 (Swisher deposition). He was placed in protective custody ("PC") with three other detainees, specifically in a cell in F Block, one of two PC blocks at DCJ. *Id.* at 18; dkt. 48-4 at 11-12 (Martin deposition). F Block is a pod that has four four-person cells on the bottom floor and four cells on the second floor. Dkt. 48-3 at 13 (Curtis deposition). While in PC, a detainee and their cellmates are allowed out for one hour of recreation time per day. *Id.* at 12. During one cell's recreation time, the other cells in the pod are supposed to remain closed. Dkt. 48-4 at 16.

The opening and closing of cell doors at DCJ is accomplished by Sheriff's Department employees in a central control pod through a computer system. Dkt. 48-3 at 14. The computer

screen has a grid divided into different cellblocks. *Id.* Operating the system includes dragging the mouse and clicking on which DCJ cellblock is to be opened, then usually selecting in a different screen box whether to open all the doors or close and lock them. *Id.* The opening and closing of cells in F Block is slightly different, however, because ordinarily the cell doors are only opened and closed one at a time rather than all at once. *Id.* at 39-40. There are "more buttons to push" when it comes to individually opening cells. *Id.* at 40.

Officer Curtis began working at DCJ in October 2021. *Id.* at 7. She received training on operating the cell door computer operating system during her first three months on the job. *Id.* at 10. According to Officer Curtis, it can be difficult to learn how to use the system, and she was only becoming comfortable with it at the time of her deposition in December 2023. *Id.* at 16. She also said during her deposition, "I'm always nervous when I get on there because you don't want to make a mistake, so you're, like, super careful, but mistakes happen. And, you know, I tried to tell other people don't take it too bad. Everybody's made a mistake in here." *Id.*

On May 1, Officer Curtis was operating the DCJ cell door operating system from the control pod; she was probably ordered to do so by a superior officer, though she might have been temporarily filling in for another officer who was called away to perform other duties. *Id.* at 18. At approximately 10 p.m., there was a request over the radio to open all the cell doors in the non-PC cellblocks (A, B, C, G, H, I, J) for head count. *Id.* at 31. Somehow, Officer Curtis opened all the cells in F Block too by clicking an incorrect part of the computer screen. *Id.*

As soon as the doors were open, another inmate in F Block came out of his cell next to Mr. Swisher's, went directly to Mr. Swisher's cell, and began attacking him. Dkt. 48-1 at 25. As indicated by video from the control room, several officers, including Officer Curtis, immediately began scrambling when it was apparent what was happening. Dkt. 70 Manual Filing, C215 @ 2:20.

3

Officer Curtis was directed to remain at her station while other officers, including Officer Martin, went to F Block. *Id.* Although officers arrived at the scene within about a minute, the assault was over by that time. *Id.*, C187 @ 3:12.

Mr. Swisher's face and head were bloodied. Dkt. 48-1 at 30. Officer Martin helped immediately escort Mr. Swisher to the medical station where a nurse was on duty and "let medical know what was going on." Dkt. 48-4 at 55. She handcuffed Mr. Swisher to a bench and left him there with another officer, then returned to F Block to assist with the situation there and had no further interaction with Mr. Swisher. *Id.* at 56; dkt. 48-1 at 36. Unfortunately, Mr. Swisher did not receive any medical attention for several hours after he was taken to the medical station, with the nurse on duty indicating she had many other patients to see to. Dkt. 48-1 at 38, 40. Before he received treatment or was evaluated by medical staff, a nurse ordered him to be put into a padded cell, saying "At least we know if he goes into a seizure there's nothing hard he can hit . . . ." *Id.* at 37. Mr. Swisher suffered traumatic brain injury (which causes frequent seizures) and hearing loss from the assault. *Id.* at 36-37.

Mr. Swisher filed suit on May 31, 2022. Dkt. 1. He alleged that Officer Curtis and other DCJ officers stood and watched from the control pod window for five to ten minutes while he was assaulted, and that Officer Martin did not seek any medical attention for him and instead wrote a false conduct report about him. Dkt. 13 at 2-3. Mr. Swisher also alleged that Delaware County Sheriff Skinner deprived DCJ inmates of adequate food. *Id.* at 2. The Court screened through Fourteenth Amendment failure-to-protect and medical-care claims against Officers Curtis and Swisher and ruled that the food claim against Sheriff Skinner was misjoined. *Id.* at 6.

The Court subsequently recruited counsel to represent Mr. Swisher. Dkt. 36. After Defendants filed a motion for summary judgment, Mr. Swisher filed a motion for leave to amend

his complaint to add new policy and vicarious liability claims against Sheriff Skinner. Dkt. 56. The Court denied the motion as untimely and without good cause. Dkt. 67. The summary judgment motion is now ripe for ruling.

### III.
### Discussion

#### A. Applicable Law

Conditions-of-confinement claims for pretrial detainees, which flow from the Due Process Clause of the Fourteenth Amendment, are analyzed under an objective standard. *Hardeman v. Curran*, 933 F.3d 816, 821−22 (7th Cir. 2019). Specifically with respect to a failure-to-protect claim, a pretrial detainee must show:

> (1) the defendant made an intentional decision regarding the conditions of the plaintiff's confinement; (2) those conditions put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonable available measures to abate the risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved, making the consequences of the defendant's inaction obvious; and (4) the defendant, by not taking such measures, caused the plaintiff's injuries.

<u>Thomas v. Dart</u>, 39 F.4th 835, 841 (7th Cir. 2022).

The Seventh Circuit recently emphasized "that a pretrial detainee does not have to prove a defendant's subjective awareness of a serious risk of harm." *Pittman v. Madison County*, 108 F.4th 561, 572 (7th Cir. 2024) ("*Pittman IV*"). Rather, a plaintiff need only prove that a defendant "did not take reasonable available measures to abate the risk of serious harm to [the plaintiff], even though *reasonable officers under the circumstances would have understood the high degree of risk involved*, making the consequences of the defendants' conduct obvious." *Id.* at 572 (emphasis in original). In other words, there are two steps to this analysis. The first inquiry is whether a defendant acted intentionally, knowingly, or recklessly "'with respect to the bringing about of

certain physical consequences into the world.'" *Id.* at 570 (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 395 (2015)). "This framing asks strictly whether the defendant intended to commit the physical act that caused the alleged injury." *Id.* If this showing is made, the second inquiry is whether the defendant acted "reasonably" with respect to the condition created by the action. *Id.* A defendant's subjective views cannot be considered at this step. *Id.*

> With respect to a claim of denial of adequate medical care,

> > The objective reasonableness of a decision to deny medical care likewise does not consider the defendant's *subjective* views about risk of harm and necessity of treatment. Instead, the proper inquiry turns on whether a reasonable officer in the defendant's shoes would have recognized that the plaintiff was seriously ill or injured and thus needed medical care.

*Id.* (emphasis in original). "This application of *Kingsley* comports with the Supreme Court's reminder that pretrial detainees stand in a different position than convicted prisoners." *Id.*

### B. Officer Curtis

Turning first to Officer Curtis, there is no question that it would be "objectively unreasonable" for Officer Curtis to intentionally, knowingly, or recklessly open all the cell doors in F Block at the same time. This certainly exposed Mr. Swisher to a great risk of harm, and the harm was in fact inflicted. The second element of *Kingley-Pittman IV* would be satisfied.

However, the Court concludes that the designated evidence supports no other conclusion but that Curtis's initial action in opening all the pod doors can only be described as accidental—the result of negligence, at most. Mr. Swisher argues that Officer Curtis "intentionally hit the buttons on the computer" or, if not intentionally, "her selection of the buttons on the computer was reckless, both in failing to be sure the buttons were the correct ones and in failing to make sure she was adequately experienced and knowledgeable in the system of opening the doors in the first place." Dkt. 58 at 6-7. But what Mr. Swisher is describing is negligence—that Officer Curtis failed

to take adequate care in her operation of the door-opening system. Officer Curtis had voluntary control of her movements, that is true. But there is no evidence to support a claim that Officer Curtis intentionally chose to open all of the pod doors, or that she knowingly did so, or even recklessly did so.[1]

Mr. Swisher also seems to fault Officer Curtis for operating the cell door computer system despite not feeling entirely comfortable using it at that time. She was, however, trained to use it and operating the system was part of her assigned duties. Even fully-trained professionals sometimes make "honest" mistakes. Otherwise, no judge would ever be reversed on appeal.

Despite pretrial detainees being entitled to greater constitutional protections than convicted inmates, it still is the case that "*negligently* inflicted harm" is "categorically beneath the threshold of constitutional due process." *Kingsley*, 576 U.S. at 396. Mr. Swisher's claim against Officer Curtis fails at the first step of the *Kingsley-Pittman IV* analysis. Officer Curtis is entitled to judgment as a matter of law.

### C. Officer Martin

Mr. Swisher contends that Officer Martin acted unreasonably when she did not stay with him at the medical station after taking him there to ensure that he received immediate and adequate medical treatment.[2]

---

[1] The Court also notes that Mr. Swisher's claim in his complaint that DCJ officers in the control pod stood and watched for five to ten minutes while he was assaulted after the doors were opened is indisputably contradicted by the video evidence. Officer Curtis and Martin and other officers clearly reacted instantly once they realized what was happening and Officer Martin and others arrived in F Block within about a minute of the doors being opened. "[W]here a reliable videotape clearly captures an event in dispute and blatantly contradicts one party's version of the event so that no reasonable jury could credit that party's story, a court should not adopt that party's version of the facts for the purpose of ruling on a motion for summary judgment." *McCottrell v. White*, 933 F.3d 651, 661 n.9 (7th Cir. 2019) (citing *Scott v. Harris*, 550 U.S. 372, 380-81 (2007)).

[2] As with Mr. Swisher's claim against Officer Curtis, his original claim against Officer Martin—that she did not attempt to get medical treatment for him at all—is controverted by the indisputable video evidence showing her escorting him out of F Block very shortly after officers arrived there.

Unlike Officer Curtis, Officer Martin probably can be said to have engaged in an intentional or knowing course of action by taking Mr. Swisher to the medical station and leaving him there handcuffed to a bench. And there is evidence to suggest Mr. Swisher was harmed by the following several-hour delay in being evaluated by a medical professional. This would satisfy the first step of the *Kingsley-Pittman IV* analysis. Regardless, the Court concludes that the second step is not satisfied: there is a lack of evidence that Officer Martin's voluntary conduct "was objectively unreasonable under the circumstances in terms of responding to [Mr. Swisher's] medical need . . . ." *Gonzalez v. McHenry County, Ill.*, 40 F.4th 824, 828 (7th Cir. 2022).

On this point, the Court does not perceive that the Seventh Circuit in *Pittman IV* intended to alter longstanding law that jail guards and officials generally may defer to medical staff to tend to detainees' medical needs without fear of liability for doing so. *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010). In fact, the law "encourages" such deference. *Id.* An exception to this rule applies if a jail official "had reason to know that the medical staff was failing to treat or inadequately treating an inmate." *Miranda*, 900 F.3d at 343. For example, in *Spencer v. Weisner*, 2022 WL 394701 (S.D. Ind. 2022), this Court addressed a situation in which a jail detainee submitted multiple written grievances and spoke directly to a jail officer, over the course of several months, about an almost complete lack of medical care for vaginal issues she was having. Although the detainee often was seen by nurses during this time, and the officer's initial deference to medical staff might have been reasonable, this Court held on summary judgment that there was a material question of fact as to whether the officer's continued deference for months thereafter was reasonable—at least until the detainee was referred to "see the nurse practitioner, thereby setting a treatment plan into motion . . . ." *Id.* at * 12. The officer was entitled to summary judgment from that time thereafter. *Id.*

Here, by contrast, the undisputed evidence is that Officer Martin took Mr. Swisher, who was able to walk, to the medical station within about a minute of her arrival in F Block and about two-and-a-half minutes after the attack on him began. Dkt. 70 Manual Filing, C187 @ 2:00-4:30. She then left him at the medical station in the custody of another officer, informed medical staff what had happened, then returned to F Block to assist with the situation there. There is nothing in the record to suggest that Officer Martin had any reason to think Mr. Swisher would not receive any medical evaluation for several hours thereafter, nor that she became aware later that he was not receiving treatment and failed to respond to that lack of treatment. Officer Martin's conduct was reasonable under the circumstances, and she is entitled to judgment as a matter of law.

## IV.
## Conclusion

The designated evidence establishes as a matter of law that neither Officer Curtis nor Officer Martin violated Mr. Swisher's Fourteenth Amendment due process rights while he was at DCJ. The Defendants' motion for summary judgment, dkt. [47], is **GRANTED**. Final judgment shall issue accordingly.

**IT IS SO ORDERED.**

Date: 9/3/2024

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email

CHRISTOPHER M SWISHER
1200 S. Mulberry Street, Apt. 15
Muncie, IN 47302